UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY L. JONES and ANTONIO
LYNN FLUKER,

     Plaintiffs,

v.

JONATHAN HEMINGWAY, J.
GRIMSLEY, JON FISHER, JOHN
POLKINGHORN, and C. GRIMM,

     Defendants.

_____/

Case No. 4:23-cv-10842

District Judge Brandy R. McMillion
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION
## ON DEFENDANTS' MOTION TO DISMISS (ECF No. 25)[1]

### I.     Introduction

This is a civil rights case.  Plaintiffs Ricky L. Jones (Jones) and Antonio

Lynn Fluker (Fluker), proceeding *pro se*, are suing defendants Jonathan

Hemingway, J. Grimsley, Jon Fisher, John Polkinghorn, and C. Grimm.  Plaintiffs

are a same-sex couple asserting claims under *Bivens v. Six Unknown Named*

*Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) for violations of their

First, Eighth, and Fourteenth Amendment rights stemming from defendants'

---

[1] Upon review of the motion, the undersigned deems this matter appropriate for
decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR
7.1(f)(1).

1

refusal to allow them to marry while Fluker was housed at the federal correctional institution in Milan, Michigan (FCI Milan).  *See* ECF No. 13, Amended Complaint.  Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned.  (ECF Nos. 18, 29).

Before the Court is defendants' motion to dismiss.  (ECF No. 25).  For the reasons set forth below, the undersigned RECOMMENDS that the motion be GRANTED.  Specifically, plaintiffs have failed to state a cognizable claim under *Bivens* and the undersigned recommends that the case be dismissed in its entirety on this ground.  Moreover, Hemingway could be dismissed for the additional reason that he is entitled to qualified immunity and because plaintiffs failed to state his personal involvement in a constitutional violation.  However, the other defendants are not entitled to qualified immunity.  Finally, although defendants are correct that service was insufficient, the undersigned does not recommend dismissal as the remedy.

## II.    Background

### A.    Factual Allegations

Plaintiffs filed their complaint on April 12, 2023, (ECF No. 1), and an amended complaint on August 16, 2023, (ECF No. 13).  The allegations in the amended complaint are taken as true for the purposes of defendants' motion to dismiss.

2

Plaintiffs allege that on November 17, 2022, while Fluker was a pretrial detainee at FCI Milan, Jones spoke to Fisher, indicating that he wished to marry Fluker while Fluker was detained.  Upon learning that Jones and Fluker sought a same-sex marriage, Fisher informed Jones that FCI Milan did not allow marriages at the detention center, but that they could be married at the facility after Fluker was moved to the facility.  (ECF No. 13, PageID.73).  Jones called back sometime later to speak with Fisher's supervisor about the issue and spoke with Grimsley, who also informed him that marriages were not allowed at the detention center after learning that Jones and Fluker were a same-sex couple.  (*Id.*, PageID.73-74).  Grimsley stated that similarly situated inmates were in fact allowed to marry, but only in the months of June and December.  (*Id.*, PageID.74).

In December 2022, Jones submitted a visitation request to visit Fluker, but Fisher denied it, knowing that the two were a same-sex couple.  (*Id.*, PageID.75).  Fisher informed Jones that Jones had been permanently denied visitation and that FCI Milan only allowed inmates to visit with immediate family members, which would include spouses but not fiancés.  (*Id.*).  Plaintiffs allege that these restrictions served no penological objective and that the denials to marry and have visitation were due to Jones and Fluker being a same-sex couple.  (*Id.*, PageID.76).

In the amended complaint, plaintiffs added an additional statement of claim, saying that they were able to marry on April 5, 2023, after which Grimm and

Polkinghorn spread information to other inmates that Fluker had married a man. (*Id.*, PageID.80).  Grimm and Polkinghorn knew that this would place Fluker in danger, and in fact encouraged it, which led to Fluker being assaulted multiple times by different inmates.  (*Id.*).

Plaintiffs sue defendants in their official and individual capacities.  They seek injunctive relief as to FCI Milan's marriage and visitation policies, and damages related to their individual capacity claims.  (*Id.*, PageID.77-78).

In their motion, defendants point out that in 2010, after Fluker was indicted on a charge of identity theft, Jones was convicted and sentenced to two years of probation for assisting in an escape attempt by Fluker.  *See United States v. Jones*, No. 11-20048 (E.D. Mich.).  Defendants stress that this is the reason Jones was denied visitation to Fluker and the denial was not because of their relationship.

As to this additional piece of information, defendants correctly note that the Court can consider this submission because the criminal proceeding is a publicly available legal proceeding.  *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (holding that a court may consider public records in resolving a 12(b)(6) motion).  However, the undersigned must take the allegations as true at this stage, which includes the discriminatory motivating factor behind FCI Milan's denial of Jones' visitation.

B.    Procedural History

4

On May 5, 2023, the district court who was then assigned to the case entered an order to show cause as to why the case should not be dismissed as moot, because "[b]ased upon representations made through Fluker's counsel in a criminal case pending in this Court, *see United States v. Fluker*, No. 21-20331, the Court understands that Fluker and Jones are now married."  (ECF No. 7, PageID.46). Plaintiffs responded to the order to show cause, stating that plaintiffs were married on April 5, 2023, but argued that their case was not moot because they still sought money damages for their constitutional claims.  (ECF No. 9, PageID.55-57).  The district court then vacated the order to show cause and allowed the case to proceed. (ECF No. 17).  The case was then referred to the undersigned by the original district judge (ECF No. 18) and then later by the district judge who was reassigned to the case.[2]  (ECF No. 29).

### III.    Legal Standards

"A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 555, 562 (M.D. Tenn. 2020).  "Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an

---

[2] After the initial referral, the undersigned issued a Report and Recommendation on plaintiffs' motion for a temporary restraining order and preliminary injunction. (ECF No. 19).  The undersigned recommended denying the motion due to not providing notice to defendants, as well as mootness on the marriage issue, and the recommendation was adopted by the district judge.  (ECF No. 21).

action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d.

752, 759 (6th Cir. 2014). "A Rule 12(b)(1) motion for lack of subject matter

jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the

factual existence of subject matter jurisdiction (factual attack)." *Id.* A facial

12(b)(1) attack, like the one here, "questions merely the sufficiency of the

pleading," and requires the Court to "take[] the allegations in the complaint as

true." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th

Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th

Cir. 1990)).

Under Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff bears the

burden of establishing through 'specific facts' that personal jurisdiction exists over

the non-resident defendant, and the plaintiff must make this demonstration by a

preponderance of the evidence." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir.

2012). Where, as here, the court does not conduct an evidentiary hearing on the

issue of personal jurisdiction in considering a Rule 12(b)(2) motion, the plaintiff

"need only make a prima facie showing of jurisdiction." *CompuServe, Inc. v.

Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). The Court does "not weigh the

facts disputed by the parties but instead consider[s] the pleadings in the light most

favorable to the plaintiff." *Id.* The Court may, however, "consider the defendant's

6

undisputed factual assertions." *Huizenga v. Gwynn*, 225 F. Supp. 3d 647, 654-55 (E.D. Mich. 2016).

Under Federal Rule of Civil Procedure 12(b)(5), a case may be dismissed for insufficient service of process.  Federal Rule of Civil Procedure 4(e) provides that service upon an individual from whom a waiver has not been obtained can be accomplished by delivering a copy of the summons and complaint to the individual personally, by leaving copies with an appropriate person residing at the individual's usual place of abode, or by delivering a copy of the summons and complaint to an agent authorized by appointment or law to receive service of process.  Fed. R. Civ. P. 4(e)(2).  Service upon a corporation may be made in a similar manner, or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[,]" Fed. R. Civ. P. 4(h)(1), but "service by mail does not satisfy the requirements of Rule 4(h)(1)(B)." *Technologists, Inc. v. MIR's Ltd.*, 725 F. Supp. 2d 120, 127 (D.D.C. 2010). Alternatively, a plaintiff may follow the state law for effectuating service "where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605,

608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks

and citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (concluding that a plausible claim need not contain "detailed factual

allegations," but it must contain more than "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an

inference depends on a host of considerations, including common sense and the

strength of competing explanations for the defendant's conduct." *16630 Southfield*

*Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not

have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him. . . .  [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

## IV.    Discussion

### A.    Official Capacity Claims

Defendants first argue that plaintiffs' official capacity claims must fail for two reasons: (1) the Court lacks subject matter jurisdiction due to sovereign immunity, and (2) the injunctive relief requested is moot.  Both arguments are correct.

Regarding the first argument, it is well-settled that "[w]ithout a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities." *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013).  No such waiver exists for *Bivens* claims against federal defendants in their official capacities.  As such, "a *Bivens* claim may not be asserted against a federal officer in his official capacity." *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991).  Therefore, plaintiffs' official capacity claims should be dismissed.

These claims should also be dismissed because the relief requested is now moot.  Plaintiffs' complaint sought injunctions allowing them to marry, to approve Jones' visitation, and to end the policies that prevented them from doing so.  (ECF

No. 13, PageID.77-78).  It is unclear whether plaintiffs still seek injunctive relief based on their response to the Court's order to show cause, in which they state that the case is not moot because of the *damages* sought for the constitutional violations.  (ECF No. 8, PageID.49, 52).  But if so, those claims are now moot. *See Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 550 (6th Cir. 2003) ("The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties.").  As plaintiffs' official capacity claims are limited to injunctive relief, their mootness requires dismissal.  *See Harris v. United States*, No. 16- 270, 2017 WL 3594601, at *2–4 (N.D. Ohio Aug. 21, 2017) (dismissing plaintiff's request for injunctive relief as moot where plaintiff no longer sought to marry).

## B.    Individual Capacity Claims

Defendants argue that plaintiffs' claims against them in their individual capacities must be dismissed because (1) plaintiffs have not stated a viable claim under *Bivens*, (2) defendants are entitled to qualified immunity, and (3) service was improper.  Each argument will be considered in turn below.

### 1.    Failure to State a *Bivens* Claim

#### a.    Standard

"To state a claim under *Bivens*, a plaintiff must allege that he was 'deprived of rights secured by the Constitution or laws of the United States' and that 'the

defendants who allegedly deprived [him] of those rights acted under color of federal law.' " *Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at \*2 (6th Cir. Aug. 31, 2022) (quoting *Marie v. Am. Red Cross*, 771 F.3d 344, 364 (6th Cir. 2014) (emphasis omitted)). To date, the Supreme Court has extended *Bivens* liability to federal officials in only three contexts:

> (1) under the Fourth Amendment for a violation of the prohibition against unreasonable searches and seizures of a private citizen's residence, *Bivens*, 403 U.S. at 389, 397;

> (2) under the Fifth Amendment Due Process Clause for gender discrimination, *Davis v. Passman*, 442 U.S. 228, 230-31, 248-49 (1979); and,

> (3) under the Eighth Amendment for failing to provide adequate medical treatment to a prisoner, *Carlson v. Green*, 446 U.S. 14, 16 n.1, 19 (1980).

*Id*. Since 1980, the Supreme Court has rejected extension of *Bivens* to new contexts on 12 different occasions. *See Egbert v. Boule*, 596 U.S. 482, 486 (2022) (collecting cases).

In its latest ruling, the Supreme Court declined extension of the doctrine to a Customs and Border Protection agent accused of violating the plaintiff's Fourth Amendment rights by entering his private property and using excessive force against him. *Id.* The only factor distinguishing the allegations in *Egbert* from those in *Bivens* was the federal agency involved, which introduced a border-security context to the otherwise recognized cause of action under *Bivens*.

Analyzing a plaintiff's *Bivens* claim involves a two-step inquiry.

First, [the Court] asks whether the case presents a new *Bivens* context –i.e., is it meaningfully different from the three cases in which the Court has implied a damages action. Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are "special factors" indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed. If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy.

*Egbert*, 596 U.S. at 492 (cleaned up). "[T]hose steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.*

### b.      Application

Each of plaintiffs' claims presents a new context for the application of *Bivens*. "[T]he new-context inquiry is easily satisfied." *Ziglar v. Abbasi*, 582 U.S. 120, 149 (2017). "A claim may arise in a new context even if it is based on the same constitutional provision as a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020). Even in cases that "involve similar allegations" to *Bivens* and its progeny, "and thus arguably present 'almost parallel circumstances' or a similar 'mechanism of injury,' . . . these superficial similarities are not enough to support the judicial creation of a cause of action." *Egbert*, 596 U.S. at 495 (quoting *Ziglar*, 582 U.S. at 139). As shown by *Egbert*, even a different federal agency committing the same constitutional violation can qualify as a new context. *Id.*

12

Plaintiffs' First and Fourteenth Amendment claims bear no resemblance to *Bivens*, *Davis*, or *Carlson*.  None of those cases have recognized a cause of action under the First or Fourteenth Amendments.  "[A] new context arises when there is a new 'constitutional right at issue.' "  *Id.* at 498 (quoting *Ziglar*, 582 U.S. at 140).  Furthermore, plaintiffs' right to marry and to visitation are dissimilar to the recognized causes of action involving unreasonable searches and seizures, *Bivens*; gender discrimination, *Davis*; and deliberate indifference to a serious medical need, *Carlson*.  Thus, plaintiffs cannot sue the federal defendants for these alleged deprivations without showing that the Judiciary is better equipped than Congress to fashion a remedy.

Fluker's Eighth Amendment claim fares no better.  At the onset, defendants correctly note that this claim is properly brought under the Fourteenth Amendment, as Fluker was a pretrial detainee at the time of the events described.  *See Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985).  This alone renders the claim outside of the recognized *Bivens* actions.  Further, even though Fourteenth Amendment pretrial detainee claims are analogous to Eighth Amendment prisoner claims, the specific claim here—that Polkinghorn and Grimm violated Fluker's right to safety by encouraging other inmates to assault him for having a same-sex partner—is unlike the Eighth Amendment claim in *Carlson*, which was based on inadequate medical treatment.  *See Anderson v. Fuson*, No. 23-5342, 2024 WL

13

1697766, at *3 (6th Cir. Feb. 1, 2024) (finding that an Eighth Amendment

excessive force claim presents a new context); *Greene v. United States*, No. 21-

5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022) (same); *see also*

*Sargeant v. Barfield*, 87 F.4th 358, 369 (7th Cir. 2023) (holding that Eighth

Amendment failure to protect claim where plaintiff alleged prison case manager

commented on his sexual preference, discussed him with others, and put him in a

violent housing block where he got into fights was not cognizable under *Bivens*).

The next question, then, is whether Congress might be better equipped than

the Judiciary to create a damages remedy for the alleged deprivations. *Egbert*, 596

U.S. at 492. "Under the proper approach, a court must ask more broadly if there is

any reason to think that judicial intrusion into a given field might be harmful or

inappropriate." *Id.* at 496 (cleaned up). "If so, or even if there is the *potential* for

such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.* (cleaned

up, emphasis in *Egbert*).

Here, as all of the recent Supreme Court cases applying *Bivens* have found,

special factors counsel against fashioning a new *Bivens* context and allowing

plaintiffs' claims to proceed. For instance, in *Ziglar*, the Supreme Court found

petitioners' "detention policy claims" regarding their conditions of confinement—

which allegedly included detention in cramped housing for 23 hours per day, lights

on at all hours, no access to basic hygiene products, no communication with the

14

outside world, and random, frequent strip searches—could not proceed under

*Bivens*.  582 U.S. at 137-38.  "The proper balance [between remedies for

petitioners and restrictions on the federal governments] is one for the Congress, not

the Judiciary, to undertake."  *Id*. at 146.

"[I]n any inquiry respecting the likely or probable intent of Congress, the

silence of Congress is relevant[.]"  *Id.* at 143.  The *Ziglar* Court analyzed this as

follows:

> The decision to recognize an implied cause of action under a statute
> involves somewhat different considerations than when the question is
> whether to recognize an implied cause of action to enforce a provision
> of the Constitution itself.  When Congress enacts a statute, there are
> specific procedures and times for considering its terms and the proper
> means for its enforcement.  It is logical, then, to assume that Congress
> will be explicit if it intends to create a private cause of action.  With
> respect to the Constitution, however, there is no single, specific
> congressional action to consider and interpret.
>
> Even so, it is a *significant step under separation-of-powers principles*
> for a court to determine that it has the authority, under the judicial
> power, to *create and enforce a cause of action for damages against*
> *federal officials in order to remedy a constitutional violation*.  When
> determining whether traditional equitable powers suffice to give
> necessary constitutional protection—or whether, in addition, a damages
> remedy is necessary—there are a number of economic and
> governmental concerns to consider.  Claims against federal officials
> often create substantial costs, in the form of defense and
> indemnification.  Congress, then, has a substantial responsibility to
> determine whether, and the extent to which, monetary and other
> liabilities should be imposed upon individual officers and employees of
> the Federal Government.  In addition, the time and administrative costs
> attendant upon intrusions resulting from the discovery and trial process
> are significant factors to be considered.

*Id.* at 133-34 (emphasis added).

"Given the notable change in the Court's approach to recognizing implied causes of action, however, the Court has made clear that expanding the *Bivens* remedy is now a "disfavored" judicial activity. *Id.* at 135 (quoting *Iqbal,* 556 U.S. at 675). "This is in accord with the Court's observation that it has 'consistently refused to extend *Bivens* to any new context or new category of defendants.' " *Id.* (quoting *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 68 (2001)). "Indeed, the Court has refused to do so for the past 30 years." *Id.*

Given the significant special factors regarding Congressional intent, separation of powers, and the administration of prisons, as well as the past 30-plus years of Supreme Court jurisprudence on the matter, the undersigned finds that special factors caution against allowing plaintiffs' *Bivens* claims to proceed here. Therefore, it is recommended that plaintiffs' claims be dismissed for failure to state a viable constitutional claim under *Bivens*.

### 2.    Qualified Immunity

Defendants also argue that they are entitled to qualified immunity on plaintiffs' claims because the allegations do not show a violation of a "clearly established" constitutional right. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).

### 1.    Legal Standard

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Created to protect government officials from interference with their official duties, qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It gives officials "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (punctuation modified).

When a defendant raises the defense of qualified immunity, the "plaintiff[s] bear[] the burden of showing that defendants are not entitled to qualified immunity." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). To meet this burden the plaintiff is "obliged to plead *facts* that, viewed in the light most favorable to him, make out a violation of a constitutional right so clearly established in a particularized sense that a reasonable officer confronted with the same situation would have known that his conduct violated that right." *Id.* (emphasis in original). In addition, plaintiffs' "allegations must demonstrate that each defendant officer, through his or her own individual actions, *personally* violated plaintiff[s'] rights under clearly established law." *Id.* (emphasis in

17

original).

## 2.     Application

First, defendants argue that Hemingway is entitled to qualified immunity

because there are no specific allegations against him.  Indeed, the amended

complaint fails to mention Hemingway other than listing him as a defendant.

"Because vicarious liability is inapplicable to *Bivens* . . . a plaintiff must plead that

each Government-official defendant, through the official's own individual actions,

has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  The undersigned agrees

that the complaint thus fails to state a constitutional claim against Hemingway.

However, it is clear that plaintiffs take issue with the policies and practices at FCI

Milan, for which Hemingway may be responsible.  That said, allowing plaintiffs to

amend their complaint to correct this deficiency would be futile, as they are still

unable to clear the *Bivens* hurdle as explained above.

As for Fisher and Grimsley, defendants argue that there is no plausible

constitutional violation alleged for either.  They say that Fisher and Grimsley

"simply . . . passed along information about [FCI Milan's] visitation and marriage

policies[.]"  (ECF No. 25, PageID.155-156).  However, reading plaintiffs' *pro se*

complaint indulgently, it is alleged that each was aware of plaintiffs' same-sex

relationship status before informing them that they could not be married or have

visitation and that they denied plaintiffs these rights because of plaintiffs' status.

Defendants do not address the allegations in the complaint in the light most favorable to plaintiffs.  As explained below, under a liberal reading, Fisher and Grimsley would not be entitled to qualified immunity at this time.

Plaintiffs' alleged constitutional violations against Fisher and Grimsley are sufficiently stated and clearly established.  As defendants acknowledge in their reply, stating an equal protection claim requires alleging that "the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis."  (ECF No. 28, PageID.183 (quoting *Courser v. Allard*, 969 F.3d 604, 617 (6th Cir. 2020)).  Plaintiffs' claim based on their sexual orientation would be governed by rational basis review.  *Davis v. Prison Health Servs.*, 679 F. 3d 433, 438 (6th Cir. 2012); *Ondo v. City of Cleveland*, 795 F. 3d 597, 609 (6th Cir. 2015).  Plaintiffs have alleged that the denial of their marriage and visitation served no penological interest and thus had no rational basis.  (ECF No. 13, PageID.74, 76).  Defendants counter that the denial of visitation was based on security concerns given Jones' previous conviction for assisting Fluker attempt to escape custody, which "bear[s] a rational relation to a legitimate penological interest in order to satisfy the Equal Protection Clause."  (ECF No. 28, PageID.183 (quoting *Thacker v. Campbell*, 165 F.3d 28, 1998 WL 537599, at *2 (6th Cir. Aug.

7, 1998)).[3]  While the Court may take notice of Jones' previous conviction, at this stage, it must consider the allegations that defendants' actions were based on a discriminatory motive as true.  Further, a meaningful rational basis review cannot take place without evidence.  It is clearly established that defendants may not discriminate against plaintiffs based on their sexual orientation without a rational basis, as plaintiffs have alleged.  *Davis*, *Ondo*.

Finally, as to Fluker's claim against Polkinghorn and Grimm for placing him in danger, defendants say that " '[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment.' "  (ECF No. 25, PageID.156 (quoting *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)).  They also argue that "verbal abuse or harassment" do not amount to an Eighth Amendment claim.  (*Id.*).  These arguments miss the mark of Fluker's claim.

Fluker's claim does not sound in being verbally harassed for his sexual orientation.  Rather, he alleges that Polkinghorn and Grimm announced his sexual orientation to other inmates and encouraged those inmates to assault Fluker.  Announcing Fluker's sexual orientation to other inmates may or may not state a claim for a constitutional violation.  *See Smith v. Washington*, No. 2:23-CV-12903,

---

[3] Defendants do not address whether plaintiffs are entitled to monetary damages for the initial denial of their marriage request.

20

2024 WL 233730, at *3 (E.D. Mich. Jan. 22, 2024) (acknowledging that calling the plaintiff a homosexual over the prison intercom may state a claim for relief); *cf. Arrington v. Boose*, No. CV 21-12433, 2023 WL 7095663, at *5 (E.D. Mich. Aug. 23, 2023), *report and recommendation adopted*, 2023 WL 7093678 (E.D. Mich. Oct. 26, 2023), *reconsideration denied*, 2023 WL 8261378 (E.D. Mich. Nov. 29, 2023) (equating the defendant telling other inmates the plaintiff was "gay" with mere isolated harassment and verbal statement that did not trigger constitutional protections). But encouraging other inmates to assault Fluker is a much clearer constitutional claim. *See, e.g.*, *Richards v. Whitmer*, No. 2:20-CV-122, 2021 WL 389048, at *8 (W.D. Mich. Feb. 4, 2021) (holding that the defendant's encouragement of other prisoners to attack the plaintiff stated an Eighth Amendment claim); *Dukuly v. Nuttall*, No. 1:21-CV-519, 2022 WL 292248, at *3 (W.D. Mich. Feb. 1, 2022) (holding that the plaintiff stated an Eighth Amendment claim by alleging that the defendant coerced another inmate into attacking the plaintiff with a pad lock); *Smith*, 2024 WL 233730, at *3 (finding that defendants labeling the plaintiff as a "snitch" stated a claim for relief); *LaFountain v. Martin*, 334 F. App'x 738, 741 (6th Cir. 2009) (recognizing that labeling an inmate a snitch constitutes deliberate indifference to the safety of that inmate).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was

unlawful in the situation he confronted." *Perez v. Oakland County,* 466 F.3d 416, 427 (6th Cir. 2006) (quoting *Saucier v. Katz,* 533 U.S. 194, 202 (2001).  Here, it should be clear to any corrections officer that encouraging other inmates to assault an inmate for any reason, but especially for that inmate's sexual orientation, is unlawful.  Therefore, defendants' qualified immunity defense should be denied.  However, as explained above, the complaint should be dismissed against all defendants for failure to state a viable *Bivens* claim.

## C.    Insufficient Service of Process

Lastly, defendants argue that the Court lacks personal jurisdiction over defendants because they were not properly served.  "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).  This argument is essentially moot because defendants have responded to the complaint and argued that it should be dismissed on grounds other than improper service.  However, it will be briefly addressed for the sake of completeness.

The Federal Rules do not contemplate service by mail.  However, they allow for service under state rules "where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  In Michigan, service may be made by certified mail with restricted delivery.  *See Bullington v. Corbell*, 293 Mich. App. 549, 557

(2011) (citing M.C.R. § 2.105(A)(2)).  "Service is made when the defendant

acknowledges receipt of the mail.  A copy of the return receipt signed by the

defendant must be attached to proof showing service under subrule (A)(2)."

M.C.R. § 2.105(A)(2).

Here, plaintiffs attempted to serve Grimsley, Fisher, Polkinghorn, and

Grimm by certified mail, and did so correctly by checking the box for Restricted

Delivery.  *See* ECF No. 20, Certificate of Service/Summons Returned Executed.[4]

The green cards required to show proof of service were returned and filed with the

Court, but despite plaintiffs' efforts, they were not signed by the named

defendants.  Defendants are correct that this renders plaintiffs' service attempts

insufficient.

Under normal circumstances, the undersigned would simply allow plaintiffs

to make another attempt at serving defendants and extend the time for service

under Federal Rule of Civil Procedure 4(m).  Again, because the case should be

dismissed for failure to state a claim under *Bivens*, the undersigned does not

recommend dismissal on this ground as the remedy for improper service.

## V.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that

defendants' motion to dismiss, (ECF No. 25), be GRANTED.  Specifically, it is

---

[4] There is no certificate of service in the record for Hemingway.

RECOMMENDED that the complaint be dismissed as to all defendants based on a failure to state a cognizable claim under *Bivens*.  Moreover, Hemingway could be dismissed for the additional reason that he is entitled to qualified immunity and because plaintiffs failed to state his personal involvement in a constitutional violation.  However, the other defendants are not entitled to qualified immunity. Finally, although defendants are correct that service was insufficient, the undersigned does not recommend dismissal as the remedy.

Dated: June 13, 2024                              s/Kimberly G. Altman
Detroit, Michigan                                 KIMBERLY G. ALTMAN
                                                  United States Magistrate Judge


## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 13, 2024.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager